## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BOBBY GRISWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.  CV-04-S-2737-M** |
| | ) | |
| **RELIANCE STANDARD LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Bobby Griswell, commenced this action in the Circuit Court of Etowah County, Alabama, claiming that defendant, Reliance Standard Life Insurance Company ("Reliance"), wrongfully terminated his long-term disability benefits.[1] Reliance removed the action to this court on the basis of federal question jurisdiction: *i.e.*, the case involves a claim for disability benefits under an insurance policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[2]  *See also* 28 U.S.C. §§ 1331, 1441.  The action now is before the court on Griswell's motion for partial summary judgment,[3] Reliance's cross-motion for summary judgment,[4] and Reliance's motion to strike certain medical

---

[1] *See* doc. no. 1 (notice of removal), at attached state court complaint.

[2] *See* doc. no. 1 (notice of removal).

[3] Doc. no. 10.

[4] Doc. no. 13.

records submitted by Griswell in support of his motion for partial summary judgment.[5]

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

---

[5] Doc. no. 24.

2

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## PART ONE

### *Factual Background*

Reliance is in the business of underwriting a variety of group insurance coverages that are incorporated into employee benefit packages.[6]  On October 1, 1999, Reliance issued a group long-term disability policy to Visador Company, LLC.[7] One of Visador's affiliates is Crown Column & Millwork, LLC, located in Gadsden, Alabama.[8]  It is undisputed that the Reliance policy was issued, in pertinent part, for the benefit of the employees of Crown Column & Millwork.

**A.**    *The Subject Policy Exclusion*

An insured was eligible for long-term disability benefits under the terms of the Reliance policy in the event of a "total disability,"[9] *provided* the disability was not "caused by," "contributed to by," or the "result[]" of a "pre-existing condition."[10]  The policy defined "pre-existing condition" as "any Sickness or Injury for which the

---

[6] *See* description of the company, *available at* http://www.rsli.com.

[7] *See* doc. no. 15 (Reliance's Evidentiary Submission in Support of its Motion for Summary Judgment), at Bates Number AR 77.

[8] *See id.* at AR 116.

[9] *See id.* at AR 93.  *See also id.* at AR 85 (defining the terms "totally disabled" and "total disability").

[10] *Id.* at AR 97.

3

Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the 6 months immediately prior to the Insured's effective date of insurance."[11]

**B**.   *Plaintiff's 1977 Injury and Surgery*

Griswell suffered a severe, on-the-job back injury in 1977,[12] when a heavy ramp fell on him while working for another employer.[13]   Alfred Colquitt, III, M.D., treated Griswell for the injury,[14] which required the fusion of lumbar vertebrae and the insertion of a "Harrington rod,"[15] a system of metal hooks and rods surgically inserted in the posterior elements of the spine.   *See Dorland's Illustrated Medical Dictionary* 733, 845-46 (28th ed. 1994).[16]   After recovering from surgery, Griswell returned to work as a long-haul truck driver, and remained in that occupation for

---

[11] *Id.* at AR 84.

[12] *See* doc. no. 18 (Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Reply in Support of Summary Judgment), Ex. 17, Supplemental Affidavit of Bobby Griswell, at unnumbered page 1.

[13] *See* doc. no. 23 (Submission of Medical Records of Dr. Paul Muratta), at unnumbered page 7 ("He relates that in 1977, a 1200-pound ramp fell on him at work and broke his back at L2-L3.")

[14] *See* doc. no. 18 (Plaintiff's Response), Ex. 17, Supplemental Affidavit of Bobby Griswell, at unnumbered page 1.

[15] Doc. no. 15 (Reliance's evidentiary submission), at AR 289.   The medical report with the bates number AR 289 does not, on its face, specify that it was completed by Dr. Colquitt.   However, Griswell asserts that it was.   *See* doc. no. 18 at 2.

[16] The Harrington rod or instrument commonly is used to treat scoliosis and other spinal deformities, *see Dorland's* at 846; but, as seen in the present case, the instrument also can be used to treat a back injury.

4

many years, up to and including the time-period relevant to this suit.[17]

**C**.    *Plaintiff's Chiropractic Care — May 2000 to November 2001*

In May of 2000, more than two decades after his 1977 surgery, Griswell began treatment at the McClellan Chiropractic Clinic in Rainbow City, Alabama ("the Clinic").[18]   At the time of initiating such treatment, Griswell was employed by an entity that is not a party to these proceedings ("Dixie Pacific Manufacturing Company"), and he was not covered by the Reliance policy at issue here.[19]   The Clinic maintained a log of Griswell's treatments, and the first entry, dated May 8, 2000, contains the following observations:

> Patient reports to our office today with complaints of an ache with severe muscle spasms in his low back on the left side which radiates into the groin area and left buttock.   Patient states that the symptoms are constant and is [sic] aggravated by driving and sitting.   Patient reports these symptoms following straining his back on 04/23/00 when he was getting in and out of his truck . . . . I advised patient to use ice at home thirty minutes on and thirty minutes off.[20]

Following his initial visit to the Clinic, Griswell received chiropractic treatments on a regular basis for approximately eighteen months, until November 28, 2001— a period of time that overlaps Griswell's subsequent employment by Crown Column

---

[17] *See* doc. no. 15 (Reliance's evidentiary submission), at AR 167-68 (employment history).

[18] *Id.* at AR 184-85.

[19] *Id.* at AR 168.

[20] *Id.* at AR 185.

5

& Millwork, and, coverage under the subject Reliance policy.[21]  The Clinic's logs record that Griswell complained not only of back pain, but also of pain and tension in his neck, shoulder, elbow, and pelvis.[22]

**D**.   *The Inception of Plaintiff's Employment with Crown Column & Millwork and Coverage by the Subject Reliance Insurance Policy*

Griswell began his employment with Crown Column & Millwork on or about January 31 or February 1, 2001.[23]  He was immediately insured by the Reliance policy.[24]

**1**.   *Griswell's job duties*

Griswell's duties for Crown Column & Millwork included loading goods in Alabama, and then transporting the merchandise by truck to destinations throughout the New England area.[25]  In Griswell's words, the job required him to have a "Strong Back — to handle lifting and carrying . . . along with hours of riding over rough

---

[21] *See* doc. no. 15 (Reliance's evidentiary submission), at AR 185-95.

[22] *Id.*

[23] *Id.* at AR 111 (Jan. 31) and AR 168 (Feb. 1).

[24] *Id.* at AR 111.  There was initially some confusion as to the effective date of Griswell's insurance.  Griswell asserted, in his motion for summary judgment, that his insurance became effective on May 1, 2001 — *i.e.*, three months *after* the commencement of his employment with Crown Column & Millwork.  (*See* doc. no. 10, Motion for Partial Summary Judgment, Statement of Undisputed Facts, ¶ 1 at 1).  In response, Reliance clarified that the effective date of coverage was not May 1, but actually February 1, 2001.  (*See* doc. no. 16, Reliance Life Insurance Company's Response to Plaintiff's Motion for Partial Summary Judgment, at 2 n.1).  Griswell later agreed.  (*See* doc. no. 18, Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Reply in Support of Summary Judgment, Restatement of Facts, ¶ 1 at 5).

[25] *See* doc. no. 15 (Reliance's evidentiary submission), at AR 168.

roads."[26]

2.   *Griswell's September 2001 on-the-job injury*

On or about September 19, 2001, approximately eight months after beginning his employment with Crown Column & Millwork, and while hauling a load through the State of New York, Griswell's truck "hit a bump in the road," causing his seat "to bottom out."[27]  The jolt "caused a severe pain in [his] back."[28]  Griswell attempted to continue working for a few weeks, but on October 8, 2001, decided he could no longer perform his job duties, due to intense pain in his back.[29]  Griswell was examined by Dr. Alfred Colquitt, who had been his treating physician following the 1977 back injury, on September 28, 2001.  Dr. Colquitt's office notes for that date record the following:

> Bobby is seen with two complaints today.  The first is lower back pain and the second is left shoulder pain.  The back bothers him almost constantly and it bothers him while driving his truck, loading and unloading the truck, and even at rest on occasion.  The pain is toward the right more so than the left, with radiation into the right buttock and not going below the knees.  *The onset of this pain resulted from an injury that occurred on the job in 1977.*  I treated him for this injury.  The old records are not available, but apparently he had a severe compression fracture and was treated with a [Harrington] rod and

---

[26] *Id.*

[27] Doc. no. 18 (Plaintiff's response and reply), Ex. 17, Supplemental Affidavit of Bobby Griswell, at unnumbered page 1.

[28] *Id.*

[29] *Id.*; *see also* doc. no. 15 (Reliance's evidentiary submission), at AR 113.

lumbar fusion.[30]

Dr. Colquitt referred Griswell to Tapan Daftari, M.D., a specialist in spinal surgery.[31]

Griswell was seen by Dr. Daftari on several occasions.[32]  In a written report dated October 4, 2001, Dr. Daftari documented that Griswell was experiencing "thoracic pain radiating to the belly button area.  His back pain is chronic . . . . *The accident was in 1977*."[33]  In a report dated October 25 of the same year, Dr. Daftari added that Griswell suffered from "mostly left-sided flank pain and thoracolumbar pain, *going on for 3 years or more.*"[34]

Griswell subsequently consulted with Dan Sparks, M.D., who documented his February 18, 2002 examination as follows:

I have examined Mr. Griswell and have found him to be severely

---

[30] Doc. no. 15 (Reliance's evidentiary submission), at AR 289 (emphasis supplied).  The medical report with the bates number AR 289 does not, on its face, specify that it was completed by Dr. Colquitt.  However, Griswell asserts that it was.  *See* doc. no. 18 (Plaintiff's response and reply), at 2.

[31] *See* doc. no. 18 (Plaintiff's response and reply), Ex. 17, Supplemental Affidavit of Bobby Griswell, at 1.  *See also* biography of Dr. Daftari, *available at* http://www.resurgens.com.

[32] *See* doc. no. 18 (Plaintiff's response and reply), Ex. 17, Supplemental Affidavit of Bobby Griswell, at 1.

[33] Doc. no. 15 (Reliance's evidentiary submission), at AR 286 (emphasis supplied).  The medical report with the bates number AR 286 does not, on its face, specify that it was completed by Dr. Daftari.  However, Griswell asserts that it was.  *See* doc. no. 18 (plaintiff's response and reply), at 6.

[34] Doc. no. 15 (Reliance's evidentiary submission), at AR 276 (emphasis supplied).  The medical report with the bates number AR 276 does not, on its face, specify that it was completed by Dr. Daftari.  However, Griswell asserts that it was.  *See* doc. no. 18 (Plaintiff's response and reply), at 7-8.

disabled.  He has Harrington Rods at L5 down to S1.[35]  He has an exaggerated Kyphosis, which prevents him [from] being able to sit or stand erect.  He has advanced degenerative joint disease of the entire spine.

I do not believe that it is reasonable for Mr. Griswell to be able to perform the rigors of a full time employment.  It is doubtful that he could do part time.  Even then there would be severe restrictions on what activities he could perform.[36]

E.   *Approval of Plaintiff's Application for Long Term Disability Benefits*

Griswell completed an application for long-term disability benefits on March 17, 2002.[37]  The application form required him to answer a number of questions, including "why are you unable to work"?[38]  Griswell wrote in the corresponding space, "condition of back in thoracolumbar region T-10 T-11 & T-12."[39]  The application form also required Griswell to identify when, where, and how his injury occurred.  Griswell represented that his injury occurred on *September 10, 2001*, when he was driving his truck for Crown Column & Millwork in New York State, and he "hit [a] dip" in the road.[40]  Significantly, Griswell did not mention either his 1977

---

[35] There is conflicting evidence as to the precise placement of the Harrington rods in Griswell's spine.  *See* doc. no. 15 (Reliance's evidentiary submission), at AR 221 (indicating that the rods extend from "L1-LS"); *id.* at AR 227 ("L1-L5"); and *id.* at AR 292 ("L1 to S1").

[36] *Id.* at AR 218.

[37] *See id.* at AR 113-14.

[38] *Id.* at AR 113 (all letters capitalized in original).

[39] *Id.*

[40] *Id.*

surgical procedure, or the back ailments that caused him to seek regular treatment at the McClellan Chiropractic Clinic, beginning in May 2000.  In response to the question asking for "all medical practitioners consulted for this condition,"[41] Griswell identified Dr. Daftari and Dr. Sparks, but not the McClellan Chiropractic Clinic.[42] Reliance received Griswell's application on April 1,[43] and approved it on May 8, 2002.[44]

**F**.    *Plaintiff's Functional Capacity Evaluation*

Griswell later submitted to testing at the Gadsden Regional Medical Center in Rainbow City, Alabama, for the purpose of determining the extent of his spinal impairment.[45]  The test results were summarized in a "Functional Capacity Evaluation Report," dated November 5, 2002.[46]  The Report identified Griswell's "primary diagnosis" as "chronic low back pain," and his "secondary diagnosis" as "thoracic pain, left shoulder bursitis and pain."[47]  The Report also summarized Griswell's prior medical history as follows:

21.  TYPE OF INJURY:              *Hydraulic Ramp fell on him and*

---

[41] *Id.* at AR 114 (all letters capitalized and bold in original).

[42] *See id.*  Griswell also did not identify Dr. Colquitt.

[43] *See id.* at AR 113

[44] *See id.* at AR 53.

[45] *See* doc. no. 15 (Reliance's evidentiary submission), at AR 235.

[46] *See id.* at AR 238-54.

[47] *Id.* at AR 252 (some letters capitalized in original).

|  | *crushed L2 and L3 with progressive decline and reinjury* going over bumps in short truck |
|---|---|
| 22.  DATE OF INJURY: | *2/1977; Reinjury 10/8/01* |
| 23.  PERTINENT SURGERY: | Fusion L1-S1 with Harrington Rods 2/1977 |
| . . . . | |
| 27.  PREVIOUS TREATMENT: | PT following initial injury. *Chiropractic care x2 years.*[48] |

**G**.   *Termination of Plaintiff's Long Term Disability Benefits*

Reliance conducted an additional review of Griswell's claim for long-term disability benefits in May 2003.  His file was reviewed by Jennifer Voisine.[49]  The record does not specify why the review was conducted (Griswell had been drawing disability benefits for over a year), or whether Ms. Voisine was an employee of Reliance, or a hired consultant.  In any event, Ms. Voisine determined that on the date Reliance considered and approved Griswell's claim for benefits, the company had failed to investigate Griswell's medical history for the six month period preceding the effective date of his insurance coverage.  In other words, the company had failed to investigate whether Griswell had suffered a "pre-existing condition" that would

---

[48] *Id.* at AR 253 (emphasis supplied).

[49] *See id.* at AR 75-76.

exclude him from coverage.[50]

Reliance sent a "Pre-Existing Condition Questionnaire" to Griswell on June 17, 2003.[51]  The first section asked Griswell to identify any physician, therapist, or other medical provider with whom he had consulted during the six month period preceding *May 1, 2001*.[52]  The insertion of the date "May 1, 2001" was an error.  As noted in the text accompanying note 11 *supra*, the Reliance policy defined "pre-existing condition" as meaning "any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, *during the 6 months immediately prior to the Insured's effective date of insurance*."[53]  Further, as noted in Part One (Section D) *supra*, the effective date of Griswell's coverage under the Reliance policy was no later than *February 1, 2001*;[54] consequently, the relevant "look back" period was the six months preceding that date — *not* May 1, 2001.  In any event, Griswell disclosed in that section of the questionnaire (and for the first time) "McClellan Chiropratic [sic] Clinic P.C."[55]

---

[50] *See id.* at AR 75.

[51] *See id.* at AR 30.

[52] *See id.* at AR 27.

[53] *Id*. at AR 84 (emphasis supplied).

[54] *See supra* note 23 and accompanying text.

[55] Doc. no. 15 (Reliance's evidentiary submission), at AR 27.

12

As a result of that disclosure, Reliance requested a portion of Griswell's records from the McClellan Chiropractic Clinic;[56] and, after reviewing the materials, determined that Griswell's long-term disability benefits were due to be terminated. In a letter dated October 6, 2003, Reliance advised Griswell that his former employer's group/employee insurance policy included a pre-existing condition exclusion, and that he fell squarely within that provision, due to the treatments he had received at the McClellan Chiropractic Clinic during the six months preceding May 1, 2001.  The company informed Griswell that his benefits would be terminated accordingly.[57]

**H**.   *Administrative Appeal*

Griswell requested Reliance to reconsider its decision on October 15, 2003, and, in the process, to review additional evidence that previously had been omitted from his file.[58]  Among other materials, Griswell submitted a *complete* copy of his records from the McClellan Chriopractic Clinic.[59]

Reliance submitted Griswell's file to an independent medical examiner on June

---

[56] *Id.* at AR 25 (requesting Griswell's medical records for the six month period prior to *May 1, 2001*).

[57] *See id.* at AR 20.

[58] *Id.* at AR 18.

[59] *Id.* at AR 183-95.

13

3, 2004.[60]   This file included the medical records provided by Doctors Colquitt, Daftari, and Sparks, the McClellan Chiropractic Clinic, and the 2002 Functional Capacity Evaluation Report prepared at the Gadsden Regional Medical Center.[61] Reliance instructed the examiner to review, in particular, any medical treatments Griswell had received in the six month period preceding *May 1, 2001.*[62]

The independent examiner issued a report of decision on July 7, 2004,[63] concluding that: Griswell had suffered a severe back injury in 1977; that he condition had deteriorated over time; that Griswell had received treatment for the condition at the McClellan Chiropractic Clinic during the six month period preceding May 1, 2001; and, the condition caused Griswell to cease working in October of 2001.[64]

Reliance accordingly advised Griswell on July 15, 2004 of its decision to affirm the termination of his benefits.[65]   The company reiterated that Griswell's policy included a pre-existing condition exclusion, and that Griswell fell squarely within that exclusion, due to the treatments he had received at the McClellan Chiropractic Clinic. According to the company, its findings were based upon its own review of Griswell's

---

[60] *Id.* at AR 173.

[61] *Id.* at AR 174-75.

[62] *See* doc. no. 15 (Reliance's evidentiary submission), at AR 173; see also the second textual paragraph in Part One (Section G) *supra.*

[63] *Id.* at AR 174.

[64] *Id.* at AR 173-74.

[65] *Id.* at AR 4-6.

14

medical records, as well as the conclusions of the independent medical examiner.[66]
There was but one consolation for Griswell:  he was allowed to retain the benefits
already paid.    As Reliance explained, "[b]ecause a pre-existing condition
investigation was not conducted until after these payments were issued, [the
company] will not attempt to recover these payments at this time."[67]

**PART TWO**

*Procedural History*

Griswell filed a motion for partial summary judgment on February 22, 2005,
seeking a determination that:  (1) Reliance's denial of benefits is subject to *de novo*
review; (2) the pre-existing condition exclusion in Reliance's policy is unenforceable
as a matter of law; or (3) in the alternative, even if the exclusion were enforceable,
the decision to terminate his benefits under the exclusion was "wrong."[68]  Reliance
filed a cross-motion for summary judgment on February 25, 2005, requesting the
court to find that the decision to terminate Griswell's benefits was not "wrong," and
to affirm the decision.[69]

Griswell filed a "Submission of Medical Records of Dr. Muratta" on July 28,

---

[66] *Id.*

[67] *Id.* at AR 5.

[68] Doc. no. 10.

[69] Doc. no. 13.

2005, in further support of his motion for partial summary judgment.[70]  Griswell explained that he had consulted with Paul M. Muratta, D.O., for his back ailment after he was unable to work, but he had only recently obtained the complete and relevant medical records.  Reliance moved to strike the submission on August 2, 2005, arguing that Dr. Muratta's records were not part of the administrative record and, additionally, the records were irrelevant to the question of whether Griswell was properly excluded from coverage due to a pre-existing condition.[71]

## PART THREE

### Discussion

It is undisputed that Reliance's insurance policy is governed by ERISA, which was enacted by Congress "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 113 (1989) (internal markings and citations omitted).  Among other matters, ERISA regulates employee welfare benefit plans that, through the purchase of insurance or otherwise, provide benefits to employees in the event of disability.  *See Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 44 (1987) (citing 29 U.S.C. § 1002(1)).

**A.**    *Enforceability of Pre-Existing Condition Exclusion*

---

[70] Doc. no. 23.

[71] Doc. no. 24.

16

As a threshold matter, Griswell contends that Reliance's pre-existing condition exclusion is unenforceable, for any of the following three reasons: (1) Griswell never received a copy of the insurance policy and, therefore, had no notice of the pre-existing condition exclusion; (2) Reliance initially approved Griswell's claim for benefits without investigating whether he had a pre-existing condition, and thereby waived its right to enforce the exclusion; and (3) certain terms in the pre-existing condition exclusion are ambiguous. Each argument will be addressed in turn.

1.    *Notice — 29 U.S.C. §§ 1021, 1022, and 1024*

A plan "administrator" is required by Title 29, United States Code, sections 1021 and 1024 to provide plan participants and beneficiaries with, among other things, a "summary plan description" ("SPD"). *See, e.g., Watson v. Deaconess Waltham Hospital*, 298 F.3d 102, 112 (1st Cir. 2002). A summary plan description must summarize the "the plan's requirements respecting eligibility for participation and benefits," as well as the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Importantly, the administrator who is tasked with providing the summary plan description is defined as:

> **(i)**  the person specifically so designated by the terms of the instrument under which the plan is operated;

**(ii)** if an administrator is not so designated, the plan sponsor;[72] or

**(iii)** in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). A civil action may be brought by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[73] Even so, substantive remedies under § 1132(a)(1)(B) are generally unavailable for technical violations of ERISA's notice requirements; instead, there must be a showing of exceptional circumstances, such as bad faith, active concealment, or fraud. *See Watson*, 298 F.3d at 113 (collecting cases).

Griswell asserts that he never received a copy of the Reliance "policy" and,

---

[72] In turn, the term "plan sponsor" means

. . . (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16)(B).

[73] 29 U.S.C. § 1132 sets forth a number of remedies available under ERISA. Even so, Griswell does not specify which subsection of § 1132 provides the remedy he seeks. The court understands Griswell's arguments, however, to be asserting a claim under § 1132(a)(1)(B).

therefore, had no notice of the pre-existing condition exclusion.[74]  Griswell reasons

that his disability benefits should be reinstated on that basis.[75]  Griswell's argument

may be construed in either of two ways, but it is unavailing under either

interpretation.  On one hand, if Griswell is complaining that he never received a copy

of the Reliance *insurance policy*, then he has no remedy.  ERISA does not require an

insurance company to provide a copy of its *policy* to the insured.  *See Senkier v.*

*Hartford Life & Accident Insurance Company*, 948 F.2d 1050, 1051 (7th Cir. 1991)

("The plaintiff argues that her decedent never received the policy.  So what?  Nothing

in ERISA requires that the insurance policy summarized in the summary plan

document be given the insured.").[76]

---

[74] Doc. no. 12 (plaintiff's evidentiary submission), Ex. 1, Affidavit of Bobby Griswell, at 1.

[75] *See* doc. no. 10 (Motion for Partial Summary Judgment), at 12-15.

[76] In the alternative, Griswell observes that under Alabama state law, an insurance company is required to deliver a copy of the insurance policy to the insured.  *See* doc. no. 10 (Motion for Partial Summary Judgment), at 14-15.  Griswell is correct.  The Alabama legislature "has enacted a statutory provision declaring that an insurer must deliver a policy of insurance to the insured." *Brown Machine Works & Supply Company, Inc. v. Insurance Company of North America*, 659 So. 2d 51, 54 (Ala. 1995) (citing Ala. Code § 27-14-19 (1975)).  An insurer's failure to comply with § 27-14-19 may estop the insurance company from asserting an otherwise valid coverage exclusion. *See id.* at 57-58.  Even so, Griswell candidly admits that § 27-14-19 "may be" preempted by ERISA, in which case the provision would have no applicability to this case.  (Doc. no. 10 (Motion for Partial Summary Judgment), at 15).  This precise question was recently addressed by a Magistrate Judge on this court.  Magistrate Judge Harwell G. Davis held that § 27-14-19 is indeed pre-empted by ERISA.  *See Wilcox v. The Standard Insurance Company*, 340 F. Supp. 2d 1266, 1277 (N.D. Ala. 2004) (Davis, Mag. J.).  *See also generally Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983) (observing that "state laws dealing with the subject matters covered by ERISA — reporting, disclosure, fiduciary responsibility, and the like," are generally preempted); James F. Jorden, Waldemar J. Pflepsen, Jr., and Stephen H. Goldberg, *Handbook on ERISA Litigation* § 5.01 (2d ed. 2005 Supplement) ("State laws that create reporting or disclosure requirements for ERISA plans are preempted.").  Absent any substantive arguments by Griswell on this issue, this court agrees with

On the other hand, if Griswell is complaining that he never received a copy of the *summary plan description*, that argument also is unavailing. It is undisputed that Reliance was not the plan "administrator," tasked with the duty to provide the summary plan description to Griswell. Rather, that responsibility fell on Griswell's employer, an entity that is not a party to this action. *See Hightshue v. AIG Life Insurance Company*, 135 F.3d 1144, 1149 (7th Cir. 1998) (observing that "the plan administrator . . . is the proper party to sue for failing to provide a summary plan description"). Additionally, even if Reliance were to qualify as the plan administrator, there is no evidence of bad faith, concealment, fraud, or other exceptional circumstance warranting substantive relief under § 1132(a)(1)(B). At best, Griswell has merely shown a technical violation of ERISA's notice provisions, which will not warrant the relief he seeks.

**2.**     *Notice — 29 C.F.R. § 2590.701-3(c)*

Griswell also cites a provision of the Code of Federal Regulations as support for his contention that Reliance had a duty to provide him a copy of its *insurance policy*; and having failed to do so, the pre-existing condition exclusion is unenforceable.[77] The regulatory text he relies upon reads as follows:

---

Magistrate Judge Davis.

[77] *See* doc. no. 27 (Plaintiff's Motion to Allow Supplemental Argument on Pre-Existing Condition Exclusion), at 4.

20

> **(c)  General notice of preexisting condition exclusion.**  A group
> health plan imposing a preexisting condition exclusion, and a health
> insurance issuer[78] offering group health insurance coverage subject to
> a preexisting condition exclusion, must provide a written general notice
> of preexisting condition exclusion to participants under the plan and
> cannot impose a preexisting condition exclusion with respect to a
> participant or a dependent of the participant until such a notice is
> provided.

29 C.F.R. § 2590.701-3(c).  Griswell does not provide any substantive analysis or

argument regarding the application of the foregoing regulation to the facts of this

case.[79]  Therefore, this court can only surmise what Griswell's contentions might be.

For example, if Griswell is again asserting that 29 C.F.R. § 2590.701-3(c) required

Reliance to provide him with a copy of its *insurance policy*, then that argument is

rejected a second time.  There is nothing in the plain language of the regulation that

imposes such a requirement on the insurer.

On the other hand, if Griswell is asserting that Reliance failed to provide him

notice of the language of the pre-existing condition exclusion and, therefore, the

---

[78] A "health insurance issuer" or "issuer" means "an insurance company, insurance service, or insurance organization (including an HMO) that is required to be licensed to engage in the business of insurance in a State and that is subject to State law that regulates insurance (within the meaning of section 514(b)(2) of the Act)." 29 C.F.R. § 2590.701-2.  Reliance does not dispute that it qualifies as a "health insurance issuer" or "issuer."

[79] *See* doc. no. 27 (Plaintiff's Motion to Allow Supplemental Argument on Pre-Existing Condition Exclusion).  Griswell does quote a long passage from the Tenth Circuit's decision in *Fought v. UNUM Life Insurance Company of America*, 379 F.3d 997 (10th Cir. 2004).  He does not, however, examine how the decision might be relevant.  The court finds that *Fought* is not instructive.  The *Fought* Court examined 29 C.F.R. § 2590.701-3(*a*) to help answer a question of causation.  379 F.3d at 1010.  The Court did not apply 29 C.F.R. § 2590.701-3(*c*) in the context of an insurer's duty to give notice.

exclusion is unenforceable, that argument also is rejected.  In a letter dated October 6, 2003, Reliance advised Griswell that it would terminate his benefits.  The letter quoted the precise language of the pre-existing condition exclusion, and it cited the evidence supporting the company's conclusion that the exclusion applied.[80]  Under these circumstances, Reliance imposed the pre-existing condition exclusion *contemporaneously with* providing notice of the pertinent exclusionary language. This does not contravene the plain language of the regulation.   The provision requires "a health insurance issuer" to "provide a written general notice of preexisting condition exclusion to participants."   The issuer "cannot impose a preexisting condition exclusion . . . *until* such a notice is provided."  29 C.F.R. § 2590.701-3(c) (emphasis supplied).

   **3.**   *Waiver*

   While the scope of ERISA is generally comprehensive, the statute has some gaps, where Congress intended for courts to fashion a federal common law governing employee benefit plans.  *See Glass v. United of Omaha Life Insurance Company*, 33 F.3d 1341, 1347 (11th Cir. 1994); *Thomason v. Aetna Life Insurance Company*, 9 F.3d 645, 647 (7th Cir. 1993); *Pitts v. American Security Life Insurance Company*, 931 F.2d 351, 355 (5th Cir. 1991).  "The developing federal common law of ERISA

---

[80] *See* doc. no. 15 (Reliance's evidentiary submission), at AR 20.

may look to state law for guidance, but must adhere to the congressional policy concerns that inform ERISA.   Thus, not all common law insurance principles automatically apply to ERISA-regulated insurance policies." *Glass*, 33 F.3d at 1347 (internal citation omitted).

The Eleventh Circuit has defined the common law doctrine of waiver in the context of ERISA as the "voluntary, intentional relinquishment of a known right." *Id.* (citing *Pitts*, 931 F. 2d at 355; Appleman, *Insurance Law and Practice* § 9251 488-89 (1981)).   Inherent in that definition is a requirement that an insurer or its agents have knowledge of facts related to the right purportedly waived or relinquished.   *See, e.g.,* 2-8 *Appleman on Insurance* § 8.1, LEXIS, Matben Library, Aplman File ("The substance of the doctrine of waiver is that[,] if the insurer, with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating a policy as in force, it will not thereafter be allowed to plead such facts to avoid its primary liability.").   The concept of waiver must be carefully distinguished from the related, but distinct, doctrine of equitable estoppel, because the latter doctrine requires a showing of detrimental reliance as an essential element, whereas waiver does not.[81]

---

[81] *See Glass*, 33 F.3d at 1347 & n.5 ("Furthermore, both parties in this case have interspersed arguments involving waiver into the equitable estoppel claim, failing to note the distinctions between the two.  As discussed below, waiver and estoppel are separate claims."); *Thomason*, 9 F.3d at 647 ("Waiver and estoppel are distinct, although related, concepts"); *Pitts*, 931 F.2d at 357 ("Although

"Of the circuits that have addressed the issue, only the Fifth Circuit has definitively held that waiver is a viable argument under ERISA." *Lauder v. First UNUM Life Insurance Company*, 284 F.3d 375, 381 (2nd Cir. 2002) (citing *Pitts*, 931 F.2d at 357). The Eleventh Circuit has taken a restrained position, specifically leaving open the larger question of whether the waiver doctrine might apply in the ERISA context, while concluding that it did not in the specific case before it. *See Glass*, 33 F.3d at 1348.[82] This court adopts a similar position here.

The Eleventh Circuit's definition of "waiver," *supra*, may be parsed into two elements: (1) was there a "known right"?; and (2) was there a "voluntary, intentional relinquishment" of that right? The court has little difficulty addressing the first question. Reliance authored the insurance policy at issue, and obviously understood its right to deny benefits under the pre-existing condition exclusion. *See* 2-8 *Appleman on Insurance* § 8.1 ("An insurer is charged with knowledge of the contents of its own policy."). The closer question is whether Reliance voluntarily and intentionally relinquished that right.

---

waiver and estoppel are sometimes used interchangeably, especially in the law of insurance, there is a subtle but significant legal distinction between the two.") (emphasis deleted). As the Eleventh Circuit explained, "[e]stoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated." *Glass*, 33 F.3d at 1347. "Detrimental reliance is [thus] a necessary element of estoppel, but is not always a prerequisite for waiver, and the existence of a reliance element for waiver is very unclear." *Id.*

[82] *See also Thomason*, 9 F.3d at 648-49 (same). *Contrast White v. Provident Life & Accident Insurance Company*, 114 F.3d 26, 29 (4th Cir. 1997) (holding that federal common law under ERISA does not incorporate the principles of waiver).

It is undisputed that Reliance's standard practice was to conduct a pre-existing condition investigation *before* approving or denying a claim for long-term disability benefits.[83]  Reliance concedes that it failed to conduct such an investigation until over a year *after* it approved Griswell's application.  Griswell argues that, when an insurer approves an application for benefits without undertaking an investigation to determine whether any policy exclusions apply, the insurer must be deemed to have waived the exclusion.[84]  Some courts have indicated that an insurer's conduct, standing alone, may be sufficient under certain circumstances to prove voluntary and intentional relinquishment.  *See, e.g., Saunders v. Lloyd's of London*, 779 P.2d 249, 254 (Wash. 1989) (*en banc*) ("Waiver requires that the insurers voluntarily and intentionally relinquished a known right or that their conduct warrants an inference of the relinquishment of such right.  Voluntarily implies a choice, a conscious decision to relinquish a right; conduct giving rise to a waiver argument cannot be consistent with any other interpretation than intent to waive.") (internal markings, emphasis, and citation omitted); *Hillman v. Nationwide Mutual Fire Insurance*

---

[83] During the time period relevant to this suit, Reliance required the employees in its claims department to follow the procedures set forth in a manual, called the "Claims Department Administrative Procedures Manual."  *See* doc. no. 18 (Plaintiff's Response to Defendant's Motion), Ex. 24.  Section C of the manual was titled "Long Term Disability Adjudication."  This section instructed the claims reviewer to follow several steps in the course of examining an application for long term disability benefits; among them, the reviewer was instructed to "[c]omplete any necessary pre-existing condition investigation."  *Id.* at page "C1.2."

[84] *See* doc. no. 10 (Motion for Partial Summary Judgment), at 15-18; doc. no. 18 (Plaintiff's Response to Defendant's Motion), at 24.

25

*Company*, 758 P.2d 1248, 1253 (Alaska 1988) ("When waiver is to be implied from a party's conduct, that conduct must be clear and unambiguous.").

Even so, Griswell does not cite, and this court could not locate, any decision concluding that voluntary and intentional relinquishment of a known right had occurred on the basis of facts similar to this case. *Cf.* 2-8 *Appleman on Insurance* § 8.1 ("Of course, whether or not there is a waiver must be determined from all facts and circumstances surrounding each case."). Griswell relies heavily on the Second Circuit's decision in *Lauder*, but that case does not support Griswell's position; indeed, it undermines it.

The plaintiff in *Lauder* slipped and fell in the parking lot of a convenience store, on or about her last day of employment with Coach Stores, Inc. The company carried a group, long-term disability policy issued by First UNUM Life Insurance Company ("First UNUM"). It was undisputed that the policy covered Lauder while she was an employee of Coach Stores. *See Lauder*, 284 F.3d at 377. Following her accident, Lauder submitted an application to First UNUM for disability benefits. She provided a physician's statement, as well as a letter from her doctor, indicating that she had cervical instability with a limited range of motion in her neck, due to the injuries sustained from her slip-and-fall. Lauder also completed a Release of Medical Information form, so that First UNUM could further investigate her medical

26

condition.  *See id.* at 378.  First UNUM initially made a request for Lauder's medical records, but then canceled the request because it did not wish to incur the expense of pursuing the matter.  The company instead denied Lauder's claim on the alternate basis that she was not covered under the terms of the insurance policy at the time of her accident.  *See id.*  Lauder's ERISA lawsuit followed.

The district court first determined that Lauder *was* covered under the terms of the policy at the time of the accident, contrary to the administrative finding.  The district court also determined that First UNUM had *waived* any argument that Lauder was not disabled, having abandoned that basis for the denial of benefits during its administrative review.  *See id.*  In affirming the district court's decision, the Second Circuit applied a two-fold analysis.  The Court first decided that the insurer, by its conduct, had waived its right to *investigate* the facts related to Lauder's claimed disability.  The Court reasoned as follows:

> In support of her claim [for disability benefits], Lauder gave First UNUM evidence in the form of a Physician's Statement and an accompanying doctor's letter. She also submitted a Release of Medical Information so that First UNUM could pursue an investigation of her disability. First UNUM, of course, chose not to do so.  Therefore, what First UNUM waived by its conduct was its right to *investigate*; the underlying disability itself was established.  By giving First UNUM all the information she had to prove her case, Lauder met her obligation under the policy.  Any complaints First UNUM now has about the sufficiency of such evidence are a direct result of its decision not to investigate Lauder's claim.

*Lauder*, 284 F.3d at 381-82 (emphasis in original).  The Second Circuit also held that the insurer, by its conduct, had waived its right to *assert* the underlying lack of disability defense.  The Second Circuit found the following principle of waiver to be especially instructive: "[A]n insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense."  *Id.* at 382 (brackets in original) (quoting *State of New York v. AMRO Realty Corporation*, 936 F.2d 1420, 1431 (2d Cir. 1991)).  In light of these principles, the Court determined that "First UNUM knew of Lauder's claim of disability, chose not to investigate it, and chose not to challenge it.  It therefore waived its right to rely on lack of disability as a defense to Lauder's claim." *Id.*

This court finds the *Lauder* decision to be instructive, but ultimately distinguishable.

The Reliance policy at issue defined a pre-existing condition as "any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, *during the 6 months immediately prior to the Insured's effective date of insurance*."[85]

---

[85] Doc. no. 15 (Reliance's evidentiary submission), at AR 84 (emphasis supplied).

When Reliance initially approved Griswell's claim for benefits, it had no information regarding Griswell's visits to the McClellan Chiropractic Clinic, which occurred during this relevant "look back" period.  Griswell completed his original application for benefits on March 17, 2002.  He did not identify the McClellan Chiropractic Clinic in the body of that application, let alone disclose the fact that he had received treatment for back pain at the Clinic.  This omission is significant.

Once again, Griswell's arguments in brief are not models of clarity, and this court can only surmise what his contentions may be.  If he is asserting, on the basis of *Lauder*, that Reliance voluntarily and intentionally relinquished its right to *investigate* his pre-existing condition, then that argument is rejected.  Griswell's theory would be persuasive *if* Reliance had received information regarding Griswell's chiropractic treatments, but elected to ignore that information.  *See Lauder*, 284 F.3d at 381-82.  On the other hand, if Griswell is asserting, on the basis of *Lauder*, that Reliance voluntarily and intentionally relinquished its right to *assert* the pre-existing condition exclusion, then that argument also is rejected.  Griswell's theory would be persuasive *if* Reliance had initially possessed "sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense."  *Id.* at 382.  It did not.

This court agrees with Griswell's underlying contention:  Reliance should have

paid proper attention to its business, and should have conducted a pre-existing condition investigation at the outset. Even so, the facts of this case do not support a finding of waiver. Accordingly, the court leaves open the larger question of whether the waiver doctrine might apply in the context of ERISA while concluding that waiver has not been shown here.

### 4.    *Ambiguity of plan terms*

Reliance's insurance policy states, in relevant part, that benefits will be denied where a total disability is "contributed to by" a "pre-existing condition."[86] Griswell contends that the meaning of the phrases "contributed to" and "pre-existing condition" are ambiguous and, therefore, the exclusion should be unenforceable.[87] Griswell does not offer any substantive arguments on this issue, however. Instead, he only quotes an extended passage from the Third Circuit's decision in *Lawson v. Fortis Insurance Company*, 301 F.3d 159 (3rd Cir. 2002), without examining how that decision is relevant to the facts of this case.[88] Accordingly, Griswell's conclusory

---

[86] *Id.* at AR 97.

[87] Doc. no. 18 (Plaintiff's Response to Defendant's Motion for Summary Judgment), at 32.

[88] The court finds that *Lawson* is not instructive. In *Lawson*, a minor child went to the emergency room for treatment of what was first diagnosed as a respiratory tract infection. The child was enrolled in a health insurance policy two days later, and afterward, upon re-examination, it was discovered that her illness was not a respiratory infection, but leukemia. *See Lawson*, 301 F.3d at 160. The insurance policy excluded coverage for a "pre-existing condition," which was defined as a "Sickness, Injury, disease or physical condition *for* which medical advice or treatment was recommended by a Physician or received from a Physician within the five (5) year period preceding that Covered Person's Effective Date of Coverage." *Id.* at 161 (emphasis supplied). The issue before the Third Circuit was whether it was possible for the child to have received treatment "for"

contentions regarding the ambiguity of insurance terms is rejected.

**B.**   *Denial of Benefits*

Finally, Griswell asserts that he did not have a pre-existing condition warranting his exclusion from coverage. Reliance contends just the opposite in its cross-motion for summary judgment. As a threshold matter, the court must determine the appropriate standard for reviewing Reliance's denial of claim for benefits, because ERISA does not specify the applicable standard. *See Jordan v. Metropolitan Life Insurance Co.*, 205 F. Supp. 2d 1302, 1305 (M.D. Fla. 2002) (citing, *e.g.*, *Marecek v. BellSouth Telecommunications*, 49 F.3d 702, 705 (11th Cir. 1995) (other citation omitted)).

The Supreme Court held in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), that "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. Pivoting off the *Bruch* decision, the Eleventh Circuit has promulgated three standards of review applicable to the decisions of a claim administrator: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and

---

a condition (*i.e.*, leukemia) prior to the effective date of insurance coverage, when at the time, the condition had yet to be accurately diagnosed. *See id.* at 162.

capricious where there is a conflict of interests." *Buckley v. Metropolitan Life Insurance Co.*, 115 F.3d 936, 939 (11th Cir. 1997).[89]  Griswell's motion for partial summary judgment is premised upon the contention that a *de novo* standard of review applies, while Reliance argues that a heightened arbitrary and capricious standard is applicable.  Alternatively, Reliance argues that it still prevails even under *de novo* review.  The court will assume, for the sake of discussion, that the *de novo* standard is appropriate in this case.

The Reliance policy specified that benefits would not be paid in the event (*i*) a "total disability" (*ii*) was "caused by," "contributed to by," or was the "result[]" of (*iii*) a "pre-existing condition."[90]  It is undisputed that Griswell's back ailments, which caused him to stop working on October 8, 2001, constituted a "total disability." The court also finds that Griswell had a "pre-existing condition," although during its administrative review of Griswell's application, Reliance repeatedly bungled this analysis.

The Reliance policy defined a "pre-existing condition" as "any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines,

---

[89] These standards apply not only to an administrator's interpretation of a plan term, but also to factual decisions of the administrator, such as the decision in this case to deny Griswell's benefits. *See Shaw v. Connecticut General Life Insurance Co.,* 353 F.3d 1276, 1284-85 (11th Cir. 2003).

[90] Doc. no. 15 (Reliance's evidentiary submission), at AR 97.

*during the 6 months immediately prior to the Insured's effective date of insurance*."[91]

Significantly, the effective date of Griswell's insurance was *February 1, 2001*, as opposed to the date of May 1, 2001, referred to by Reliance during administrative review. The parties now agree that this is the correct factual finding,[92] and it is an important one for purposes of this litigation. The court must "look back" at Griswell's medical records from the former date, not the latter.

Griswell strained his lower back on April 23, 2000, when he was entering and exiting his truck. Griswell made his initial visit to the McClellan Chiropractic Clinic just a few days later, on May 8, 2000, complaining of "an ache with severe muscle spasms in his low back on the left side."[93] Griswell subsequently made forty-one visits to the Clinic during the relevant "look back" period between August 1, 2000 and February 1, 2001.[94] During twenty-eight of those visits, Griswell complained of tightness, pain, swelling, or spasms in the "lower back," "dorsal spine," or "lumbar spine."[95] The following entries in Griswell's log, maintained by the Clinic, are illustrative:

Patient has pain and tension in the neck, low back, and pelvis with

---

[91] *Id.* at AR 84.

[92] *See supra* note 24.

[93] Doc. no. 15 (Reliance's evidentiary submission), at AR 185.

[94] *See id.* at AR 187-92.

[95] *See id.*

decreased range of motion in the cervical and lumbar spine. Patient has muscle spasms in the low back. I advised patient to continue low back exercises. I advised patient to use ice at home. Adjustment today.[96]

. . . .

Patient has pain and tension in the dorsal, lumbar spine, and pelvis with decreased range of motion in the dorsal spine. Patient has edema in the dorsal and lumbar spine. Patient states that he traveled last week. I advised patient to continue using ice at home. Adjustment today.[97]

. . . .

Patient has pain and tension in the dorsal and lumbar spine with muscle spasm in the low back and pelvis. Patient states that taking motrin is not helping. Adjustment and interferrential.[98]

This is compelling evidence of a "pre-existing condition." Indeed, Griswell concedes the issue without discussion.[99]

The remaining and decisive question, therefore, is whether Griswell's total disability was "caused by," "contributed to by," or was the "result[]" of Griswell's pre-existing condition? For purposes of this analysis, the court will focus on the phrase "contributed to by." The word "contributed" is defined as to "have a share in any act or effect." *Webster's Third New International Dictionary of the English Language Unabridged* 496 (2002). *See also Fought v. UNUM Life Insurance*

---

[96] *Id.* at AR 188 (entry for August 9, 2000).

[97] *Id.* at AR 189 (entry for August 30, 2000).

[98] *Id.* at AR 191 (entry for December 14, 2000).

[99] *See* doc. no. 10 (Motion for Partial Summary Judgment), at 19 (acknowledging that "Dr. McClellan's records show a pre-existing condition").

*Company of America*, 379 F.3d 997, 1009 (10th Cir. 2004) ("'Contributed' is defined broadly as '[t]o act as a determining factor.'") (quoting *Webster's II New Riverside University Dictionary* 306 (1988)).

Griswell suffered a severe spinal injury in 1977, which required the surgical insertion of a Harrington rod in his spine. Twenty-three years later, in April of 2000, Griswell strained his back while entering and exiting his truck. He sought regular treatment at the McClellan Chiroproactic Clinic for pain stemming from this incident during the "look back" period between August 1, 2000 and February 1, 2001. Finally, in September 2001, Griswell strained his back again when the truck he was operating in New York State hit a dip in the road, causing his seat to "bottom out." He was forced to stop working the following month, during October 2001, following this last incident.

The medical records show that Griswell's ailments in 2000 and 2001 were related and, in turn, related back to the original 1977 injury requiring surgical intervention. Griswell made an appointment to see Dr. Colquitt on September 28, 2001. Dr. Colquitt recorded that Griswell was suffering from "lower back pain," and remarked that the "onset of this pain *resulted from* [the first back injury] *that occurred on the job in 1977*."[100] Dr. Colquitt then referred Griswell to Dr. Daftari.

---

[100] Doc. no. 15 (Reliance's evidentiary submission), at AR 289 (emphasis supplied).

In a written report dated October 4, 2001, Dr. Daftari remarked that Griswell's "back pain is *chronic . . . . The accident was in 1977*."[101]  In a report dated October 25, 2001, Dr. Daftari added that Griswell suffered from "mostly left-sided flank pain and thoracolumbar pain, *going on for 3 years or more*."[102]  Griswell later consulted with Dr. Sparks, who recorded that a Harrington Rod had been surgically implanted in Griswell's spine, and he also found evidence of "*advanced* degenerative joint disease of the entire spine."[103]

Griswell was subjected to functional capacity testing at the Gadsden Regional Medical Center, and the test results identified Griswell's "primary diagnosis" as "*chronic* low back pain."[104]  The report also noted that Griswell had suffered a severe spinal injury in 1977, resulting in "*progressive* decline," and that Griswell had received physical therapy for that injury, including *chiropractic care for two years*.[105]

Griswell objects that his injuries in 2000 and 2001 were unrelated, but he is unable to cite to any medical evidence to support that contention.  This court can only conclude that the ailments in 2000 and 2001 *were* related — or, in the language of the Reliance policy, that Griswell's "total disability" in 2001 was "contributed to by" the

---

[101] *Id.* at AR 286 (emphasis supplied).

[102] *Id.* at AR 276 (emphasis supplied).

[103] *Id.* at AR 218 (emphasis supplied).

[104] *Id.* at AR 252 (emphasis supplied) (some letters capitalized in original).

[105] *Id.* at AR 253.

"pre-existing condition," which persisted from August 1, 2000 (indeed, from 1977) to February 1, 2001.

**PART FOUR**

*Conclusions*

In accordance with the foregoing, Reliance's motion to strike the "Submission of Medical Records of Dr. Muratta" is denied as moot, as Griswell's claims are due to be dismissed with prejudice, even upon consideration of *all* evidence in the summary judgment record.

The following motions are denied: Griswell's motion for summary judgment that the pre-existing condition exclusion is unenforceable (due to lack of notice, waiver, or ambiguity of policy terms); and, Griswell's motion for summary judgment that Reliance's decision to terminate his benefits under the pre-existing condition exclusion was "wrong."

Finally, the court will grant Reliance's cross-motion for summary judgment. Reliance's review of Griswell's claim was marred by administrative errors, but on *de novo* review the court cannot say that the ultimate decision to terminate Griswell's benefits under the pre-existing condition exclusion was "wrong." An appropriate order will be entered contemporaneously herewith.

DONE this 30th day of March, 2006.

United States District Judge